Juan Ramon **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–97–00220–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 23, 1999.

Jim Heaney, Blaise J. Heaney, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and LEE.[1]

## OPINION

FOWLER, Justice.

Appellant, Juan Ramon Rodriguez, appeals on two points of error from a motion to revoke his probation. After a hearing, the court revoked appellant's probation and assessed punishment at ten years confinement in the Texas Department of Criminal Justice, Institutional Division. We reverse the judgment and remand the cause to the court.

## FACTUAL BACKGROUND

On June 6, 1989, appellant pled guilty to delivering marihuana. The trial court assessed punishment at ten years probation. On November 6, 1996, the State filed a motion to revoke probation. The State alleged that appellant violated the terms and conditions of his probation by using cocaine and by failing to report to his probation officer. The trial court found the allegations in the motion to be true and revoked appellant's probation.

1. Senior Justice Norman Lee sitting by assignment.

## STANDARD OF REVIEW

■ An order revoking probation must be supported by a preponderance of the evidence. *See Scamardo v. State*, 517 S.W.2d 293, 298 (Tex.Crim.App.1974). The greater weight of the credible evidence must create a reasonable belief that the defendant has violated a condition of his probation. *See id.* When the sufficiency of the evidence is challenged, the evidence is viewed in a light most favorable to the trial court's findings. *See Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim.App. [Panel Op.] 1981); *Montoya v. State*, 832 S.W.2d 138, 140 (Tex.App.— Fort Worth 1992, no pet.). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Naquin v. State*, 607 S.W.2d 583, 586 (Tex.Crim.App. [Panel Op.] 1980). Appellate review of an order revoking probation is limited to a determination of whether the trial court abused its discretion. *See Flournoy v. State*, 589 S.W.2d 705, 709 (Tex.Crim.App. [Panel Op.] 1979).

## DISCUSSION AND HOLDINGS

In his first point of error, appellant contends the trial court abused its discretion by revoking his probation where the evidence was insufficient to support the allegation contained in the State's motion to revoke. In its motion to revoke, the State alleged that appellant was unable to abide by the conditions of his probation because he violated three conditions:

b. Avoid injurious or vicious habits including the use of controlled substances and alcoholic beverages. You are forbidden to use, possess, or consume any controlled substances, dangerous drugs, or marihuana unless prescribed pursuant to a lawful prescription;

d. Report immediately in person on 6/6/89 to the Harris County Adult Probation Department Intake Division, 49 San Jacinto Street, Houston, Texas and thereafter on the 6th of each month to your designated Probation Officer unless different dates within a calendar month are agreed to by you and your Probation Officer;

o. Pay a Supervision Fee to the Harris County Adult Probation Department at the rate of 440.00 per month for the entire period of probation beginning 8/6/89.

■ Proof by preponderance of the evidence on any one of the alleged violations of the conditions of probation is sufficient to support the order of revocation. *See Sanchez v. State*, 603 S.W.2d 869, 871 (Tex.Crim.App. [Panel Op.] 1980); *Jones v. State*, 571 S.W.2d 191, 193 (Tex.Crim.App. [Panel Op.] 1978); *Montoya*, 832 S.W.2d at 140. When several violations are found by the court, the order revoking probation shall be affirmed if the proof of any allegation is sufficient. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App. [Panel Op.] 1980); *McCollum v. State*, 784 S.W.2d 702, 704–05 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd).

■ Among the evidence presented at the hearing was testimony that appellant violated condition (b). This was based on a urine sample appellant provided. Appellant claims the evidence is insufficient to convict him, however, because chain of custody was not established. We review the testimony below.

At trial, James D. Daniels, the Court liaison officer for the 174th District Court and custodian of the records for the Harris County Community Supervisions and Corrections Department testified that appellant submitted to two random urine tests on July 12, 1993, and August 28, 1996. Daniels testified that both tests came back positive for cocaine metabolite. Daniels testified that, in a urine test, the person giving the urine is observed by another person, the urine is placed in an air tight container, and the urine is transported to the Harris County Medical Examiner's Office for testing. However, there is no

testimony that this procedure occurred in this case. Daniels never testified as to what specifically happened in appellant's case. He only testified about what normally happens during a urine test. Perhaps one of the reasons Daniels did not testify in the specific is that he was not involved in the testing of Rodriguez. Daniels testified that two other employees were involved. However, there is no evidence that these two employees, A.R. Hall and a Mr. Wright, observed appellant while he provided the urine sample. The only evidence about these two men is that Daniels testified that they made entries into a book about where the sample of urine was taken from appellant. However, those entries were never entered into evidence. Daniels also testified that the analysis of the urine samples was signed off on by Elena Siurna.

After this testimony by Daniels, the other witness at the trial, Elena Siurna, the Deputy Chief Toxicologist, testified about the urine sample. On direct examination, she testified as follows:

Q: Did you bring with you today some records relating to Juan Ramon Rodriguez?

A: Yes.

Q: Were those records maintained under the same conditions you just testified to?

A: Yes.

Q: Specifically[,] what type of records did you bring?

A: I have two reports of urinalysis.

Q: Do you have personal knowledge of the procedures that are used by the Medical Examiner's Office in conducting your analysis?

A: Yes.

Q: Do you as a course of that business receive specimens form the Harris County Supervisions and Corrections Department?

A: Yes.

Q: Will you or the employees of the Medical Examiner's Office do an analy-

sis on a specimen that appears to have been tampered with?

A: No.

Q: How must the specimen arrive at your office before your office will conduct an analysis?

A: The specimen has to come in a sealed container and a sealed package with a valid chain of custody form.

Q: If the specimen does not arrive in that condition, what would you do?

A: We would call the administrator and do our own analysis.

Q: If you have records with you today that show an actual analysis being done, do you have personal knowledge of whether that means a specimen came intact according to offense policies?

A: Yes.

Q: Specifically[,] what dates do the reference that you have with you relate to?

A: I have a sample date of 7/12/94 and sample date of 8/28/96.

Q: And are those marked as State's Exhibit 1 and 2?

A: Yes.

(STATE'S EXHIBIT(S) NO. 1 AND 2 IDENTIFIED)

Q: Did you sign off as the supervisor on those analyses?

A: Yes.

Q: What are the results of the analysis that was done on the specimen taken from Mr. Rodriguez on July 12, 1994?

MR. HEANEY: I object. No proper predicate laid at this time for the proper chain of command [sic].

THE COURT: That would be overruled.

A: Sample date 7/12/94, result is positive for cocaine metabolite.

Q: (BY MS. MITCHELL) What type of tests are done to determine the presence of that substance?

A: We do an initial screening and then we do a confirmation.

Q: And cocaine metabolite, if that's in your system, what substance does that mean you ingest?

A: Cocaine.

Q: Is that a controlled substance, ma'am?

A: Yes; it is.

Q: Let me ask you to look at your record relating to August 28, 1996. Was the analysis there done the same as the one on July 24, 1994?

A: Yes.

Q: Is that the same tests?

A: Yes, ma'am.

Q: And what is the result of the specimen from August 28 of 1996?

A: The urine was positive for cocaine metabolite.

Q: Once again what substance does that mean was ingested?

A: Cocaine.

Q: Is that a controlled substance?

A: Yes, ma'am.

However, on cross examination, Siurna testified that she did not personally receive the two samples tested nor did she ever participate in the examination of the two samples. She testified that she knew about the test results because she reviews all the results, that she signs off on each test result, that she reviews the quality control of each sample, that she reviews the maintenance records for the lab, and that she personally knows the people that perform the tests.

Thus, Siurna testified, generally, about the procedures of her office. She testified that the urine specimens arrive at her office in a sealed package with a valid chain of custody form. She testified that any specimens that arrive at the lab that have been tampered with will not be tested. Samples that lack a valid chain of custody form will be referred to a supervisor. From Siurna's testimony, we must *infer* that appellant's samples were not tampered with. She certainly did not state this fact; it was clear from the rec-

ord that she was *assuming* the samples had not been tampered with.

Appellant argues that this testimony of Daniels and Siurna was insufficient to show that he violated his probation by using cocaine because the State failed to prove the chain of custody of his urine samples. We agree. The combined testimony of Siurna and Daniels is not enough to show the proper chain of custody of appellant's urine. The prosecutor needed to elicit some testimony from these two witnesses that showed what occurred, specifically, with appellant's urine samples and not just what occurs generally in each witness's office. Thus, based on the evidence, the trial court improperly revoked appellant's probation for violating the condition that required appellant to avoid the use of controlled substances.

In spite of this flaw, we would be required to affirm the revocation if the State could show appellant violated another condition of his probation. Proof by preponderance of the evidence on any one of the alleged violations of the conditions of probation is sufficient to support the order of revocation. *See Sanchez,* 603 S.W.2d at 871. But, there is no other evidence to show that appellant violated the other conditions of his probation.

As to the condition requiring appellant to pay a supervision fee to the Harris County Adult Probation Department at the rate of $440.00 per month for the entire period of probation beginning August 8, 1989, there is no evidence that appellant did not pay this fee. Thus, the trial court · could not revoke appellant's probation on this condition because there is no evidence appellant violated this condition of his probation.

■ We now turn to the condition that appellant report to a probation officer starting June 6, 1989, and thereafter on the 6th of each month, unless another date within each month is reached by agreement between appellant and his probation officer. Insufficient evidence exists to re-

voke appellant's probation on this condition. Daniels testified about appellant's failure to report:

Q: Mr. Daniels, also as a condition of probation, was Mr. Rodriguez ordered to report immediately on June 6, 1989 to the Harris County Adult Probation Department Intake Division and thereafter on the 6th of each month unless different dates were agreed to between him and his probation officer?

A: Yes, ma'am; he was.

Q: Did he abide by that condition or violate that condition of probation?

A: He violated it.

Q: How did he violate that condition of probation?

A: He failed to report in person on April 26, 1995, for October 25, 1995 and also for February the 13th, 1996.

Q: According to your records, were there any excuses provided or rather did his probation officer give him an excuse not to report?

A: No, ma'am; he did not.

Again, there is not enough evidence in the record to revoke appellant's probation for failing to report. The evidence shows that appellant was required to report on the 6th of each month, unless a different date was agreed to by appellant and appellant's probation officer. Daniels testified that appellant failed to report on April 26, 1995, October 25, 1995, and February 13, 1996. However, the record does not reflect that appellant and his probation officer agreed that he would report to his probation officer on those days instead of on the 6th of these months. Thus, we cannot conclude that appellant violated his probation by failing to report to his probation officer on those days. We sustain appellant's first point of error.

In his second point of error, appellant contends the trial court erred by allowing evidence of appellant's drug test because there was no proper chain of custody proven to allow the evidence of the drug test results into the record. For the reasons articulated in point of error one, we agree. We, therefore, sustain appellant's second point of error. We reverse the judgment and remand the cause to the trial court for further proceedings.