2001-NMCA-060

28 P.3d 1143

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jay Kenneth SANCHEZ, Defendant–
Appellant.**

No. 20,659.

Court of Appeals of New Mexico.

June 26, 2001.

Certiorari Denied, No. 27,036,
Aug. 13, 2001.

Patricia A. Madrid, Attorney General, Patricia A. Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Douglas E. Couleur, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant's probation was revoked. The basis of the revocation consisted of laboratory tests indicating the presence of controlled substances in Defendant's urine. We take this opportunity to institute a threshold test for determining the admissibility of laboratory tests used for purposes of probation revocation. For the reasons discussed below, we affirm in part, but reverse the trial court's finding that the laboratory forms constituted sufficient evidence to support revocation of Defendant's probation. We remand for a new hearing on the petition to revoke probation.

## BACKGROUND

{2} Defendant was indicted on eleven charges, including four counts of residential burglary, six counts of larceny, and one count of receiving stolen property. On April 30, 1997, Defendant entered into a plea agreement before District Judge James Hall whereby he pled guilty to four counts of burglary, all third-degree felony offenses. As part of the agreement, Defendant admitted that he was the same person who committed previous crimes of voluntary manslaughter, trafficking cocaine, and trafficking heroin. Among other things, the State agreed to a sentence of twelve years, to be suspended, and Defendant was placed on five years' probation. One of the terms of the probation was that Defendant submit to random body fluid testing. The State agreed

not to bring habitual offender charges against Defendant unless he:

A. Violates the terms and conditions of his probation; or

B. Commits another crime (of any type) while on probation; or

C. Is found to have used a controlled substance while on probation as a result of a chemical test of body fluids; or

D. Fails to abide the terms and conditions of this agreement.

{3} The agreement also stated:

It is specifically stipulated that in the event habitual offender proceedings are filed in this case against the defendant that the presentation of this agreement to the Court evidencing the admitted prior felony convictions of the defendant is and will be sufficient evidence to prove the Defendant's status as a FOURTH HABITUAL OFFENDER subjecting the defendant to a mandatory term of incarceration of EIGHT (8) years on offenses pled to herein. It is understood that because the sentences in this case are to be served consecutive to each other that a conviction as a FOURTH HABITUAL OFFENDER will result in a sentence of THIRTY TWO (32) years which cannot be suspended or deferred in part or in total. AND, it is understood that habitual offender proceedings may be brought for ANY violation of the conditions listed herein or in the Probation Agreement which the Defendant signs and that the State may seek habitual offender . proceedings and sentencing whether or not the Court revokes the Defendant's probation the [sic] underlying offenses contained herein.

{4} In November 1998 the State filed a motion to revoke Defendant's probation. In support of the motion, the State attached a "Preliminary Probation Violation Report" prepared by Defendant's probation officer, Sharon Morgan. The report stated that: (1) on May 13, 1998, a urine specimen was obtained from Defendant which tested positive for alcohol, benzodiazepine, and opiates; (2) on October 15, 1998, a urine specimen was obtained from Defendant which tested positive for marijuana; and (3) when the urine was collected on October 15, Defendant admitted using marijuana. Ms. Morgan testified that, when she advised Defendant in October that she needed to take a urine sample, and before the urine sample was taken, Defendant told her that the sample would test positive for marijuana.

{5} After submitting the positive urine test in May, Defendant signed a "Letter of Reprimand" stating that the positive test allowed Ms. Morgan to initiate revocation proceedings, but she would instead recommend continued supervision. The letter stated that, "Should any future urine tests prove positive, indicating your failure to remedy the problem, stronger measures will be pursued." Defendant signed the letter on October 14, one day before he submitted the second urine specimen. As part of the "Preliminary Probation Violation Report," Ms. Morgan recommended that Defendant be allowed to remain on probation and enroll in and complete a counseling program. After receiving and reviewing a copy of Ms. Morgan's report, Defendant signed a "Preliminary Violation Report Advisement" stating that he understood his right to a hearing before any additional conditions of probation would be implemented, and that the State would have to prove the violation. Based on that statement, Defendant agreed to comply with the recommendation by Ms. Morgan and to waive his right to a hearing.

{6} In response to the State's motion to revoke probation, Defendant filed a motion to dismiss the probation violation or to suppress statements he may have made to Ms. Morgan. Defendant claimed that the revocation proceedings in connection with the urine specimen collected in May were unduly delayed, and he was prejudiced by the delay. Defendant further claimed that he was led to believe that Ms. Morgan's recommendation of continued supervision was an agreement that his probation would not be revoked if he sought counseling. The motions were denied. Defendant's written motion did not address the admissibility of the laboratory test results.

{7} The test results were included on two report forms from the drug screening laboratory indicating levels of various compounds in Defendant's urine. The forms were admitted at the motions hearing as State's Exhibits 1 and 2. Accompanying each report form was

another form for use by the persons collecting and testing the urine samples. The second set of forms was admitted as State's Exhibits 3 and 4. Exhibits 3 and 4 were not made part of the record presented to this Court; however, we have obtained copies of Exhibits 3 and 4 from the Santa Fe District Court Clerk, and we supplement the record with those copies.

{8} Exhibits 3 and 4 consist of forms that provide areas for the person collecting a laboratory sample to note if the sample was observed or unobserved, the temperature of the sample, the date and time of the collection, the collector's signature, delivery of the sample to a courier, and delivery of the sample to a laboratory processor. That portion states: "TO BE COMPLETED BY COLLECTOR—THIS SECTION MUST BE COMPLETE!." Another area on the forms provides spaces for recording chain of custody for the sample, and whether the seals were intact when the laboratory processor received them. The area for chain of custody was not completed. The chain of custody at the testing facility and the condition of the sample upon arrival at the laboratory were not indicated. Ms. Morgan testified that if the sample was observed, the temperature is not taken; however, Exhibit 4 did not indicate that the sample was observed. Neither party presented evidence or testimony at the motions hearing as to the information required to be reported on the chain-of-custody forms or as to the testing procedures for urine samples.

{9} At the hearing, Defendant objected to the admission of the laboratory forms and to their use as proof of his probation violation. After considering Defendant's arguments, the trial judge overruled the objections, holding that the State established the accuracy of the tests, "under the probation hearing standard that allows hearsay." The trial judge set a second hearing date in order to allow Defendant an opportunity to obtain evidence to attack the validity of the sample tests. The trial judge stated, "I'll give you that opportunity, but short of that I think that the case has been made for violation of probation." Defendant did not present additional evidence at the second hearing, and the trial court proceeded to sentencing. The trial court determined that Defendant's sentence

should be thirty-two years as expressed in the plea agreement.

## DISCUSSION

{10} Defendant's issues on appeal concern (1) the sufficiency of the evidence to support revocation of his probation, (2) the sufficiency of the evidence to support a finding that Defendant had three prior felonies for habitual offender proceedings, and (3) whether a sentence of thirty-two years was appropriate in this case. Defendant has also filed a request for oral argument, which we deny. *See State v. Manuelito*, 115 N.M. 394, 394, 851 P.2d 516, 516 (Ct.App.1993) (denying request for oral argument where not deemed necessary).

*Evidence Supporting Probation Revocation*

{11} Defendant argues that the laboratory tests should not have been admitted because they lacked the proper foundation. Therefore, Defendant argues, the laboratory results were unreliable and could not be the basis for his probation revocation. The State points out that the current rule in New Mexico is that proof presented at probation revocation hearings need only establish reasonable certainty to satisfy the trial court of the truth of the violation, and need not be proof beyond a reasonable doubt. *See State v. Baca*, 101 N.M. 415, 417, 683 P.2d 970, 972 (Ct.App.1984). The State further argues that the laboratory tests can be disregarded because a probation violation was shown by Defendant's admission to Ms. Morgan that he had used marijuana prior to his October 15 urine test. Therefore, the State contends, the trial court can be affirmed because, even if the court could not revoke Defendant's probation based on the laboratory tests, it could do so based on Defendant's admission. In effect, the State asks us to invoke the "right for the wrong reason" rule to affirm the trial court.

{12} Contrary to the State's argument, however, at the sentencing hearing, the trial court specifically stated that Defendant's probation was being revoked, "because he tested positive." The trial court referred to evidence presented by Defendant to the effect that, in making various statements, he had relied on statements or representations

made to him by Ms. Morgan. In other words, based on testimony presented to the trial court, a question was raised concerning the validity of Defendant's statements, and the trial court, in response to interrogation by defense counsel, disavowed reliance on Defendant's admission to revoke his probation. For example, when defense counsel asked the trial judge, "so, you're not basing the violation on any statements he made he was on drugs?," the trial judge responded, "no." The trial court thus appeared to base its ruling solely on the positive urine tests, and not on any admission by Defendant. The trial court therefore refrained from making any ruling concerning the factual question of the validity of Defendant's statements or whether they could support the accuracy of the tests. Since those facts are in dispute, invocation of the "right for any reason" rule is not appropriate in this case. *Cf. State v. Wilson*, 1998–NMCA–084, ¶ 17, 125 N.M. 390, 962 P.2d 636 (stating that appellate courts usually apply right for any reason rule to strictly legal questions).

{13} With respect to the positive urine tests, the State does not try to defend their admission or their sufficiency to support the revocation of Defendant's probation. However, since the trial court relied on those tests to support its decision, we address the issue. As pointed out by the State, the rules with regard to evidence are relaxed in proceedings involving revocation of probation. Even if the rules are relaxed, however, evidentiary requirements remain. As stated above, the evidentiary requirement for violation of probation is that the violation be established with reasonable certainty. *Baca*, 101 N.M. at 417, 683 P.2d at 972. The proof must be "that which inclines a reasonable and impartial mind to the belief that defendant had violated the terms of probation." *State v. Pacheco*, 85 N.M. 778, 780, 517 P.2d 1304, 1306 (Ct.App.1973). In addition, while a probation revocation hearing is not part of a criminal prosecution, a defendant is entitled to minimum due process rights. *See State v. Vigil*, 97 N.M. 749, 750–51, 643 P.2d 618, 619–20 (Ct.App.1982); *State v. Sanchez*, 94 N.M. 521, 523, 612 P.2d 1332, 1334 (Ct. App.1980). Those rights include written notice of the violation, disclosure of evidence against the defendant, and, most pertinent to

this case, the right to confront and cross-examine adverse witnesses. *Id.; see State v. DeBorde*, 1996–NMCA–042, ¶ 9, 121 N.M. 601, 915 P.2d 906.

{14} Other jurisdictions have struggled with the question of what standard to apply when confrontation rights are implicated in connection with laboratory tests used to revoke probation. In many cases, the courts have required more than mere submission of laboratory results. *See, e.g., United States v. Caldera*, 631 F.2d 1227, 1228 (5th Cir.1980) (per curiam) (holding introduction of laboratory test through police officer, and not laboratory personnel, did not comport with defendant's right of confrontation and to cross-examine adverse witnesses); *State v. Beck*, 619 N.W.2d 247, 252 (S.D.2000) (holding without showing of good cause for absence of live testimony, and showing of reliability of laboratory report, admission of report into evidence in support of probation revocation was error); *Legree v. State*, 739 So.2d 616, 617 (Fla.Dist.Ct.App.1999) (per curiam) (holding hearsay laboratory reports were admissible in probation revocation proceeding, but could not serve as sole evidentiary basis for charged violation of probation); *Rodriguez v. State*, 2 S.W.3d 744, 748 (Tex.App. 1999) (holding that absent testimony concerning chain of custody of defendant's urine sample, evidence was insufficient to support revocation of probation due to alleged cocaine use); *People ex rel. Saafir v. Mantello*, 163 A.D.2d 824, 558 N.Y.S.2d 356, 357 (A.D.4th 1990) (Mem.) (holding that where sole evidence of drug use was uncertified report of private laboratory concerning defendant's urine samples, evidence was not sufficiently reliable to satisfy state's burden of proof, even though hearsay is admissible in parole revocation proceeding); *State v. Quelnan*, 70 Haw. 194, 767 P.2d 243, 246–47 (1989) (holding submission of positive urinalysis results into evidence solely through police officer's testimony was insufficient to support revocation of probation, because defendant's ability to challenge validity of testing methods and procedures was severely limited, due to absence of declarant for cross-examination); *Wilson v. State*, 70 Md.App. 527, 521 A.2d 1257, 1260–62 (1987) (holding that though good cause shown for not allowing defendant

to confront witnesses, laboratory report was not sufficiently reliable to justify revocation of defendant's probation).

{15} Other courts, however, have held that positive drug test results are admissible without supporting evidence concerning their reliability. *See Harris v. United States,* 612 A.2d 198, 202 (D.C.1992) (trial judge did not err when he concluded that government need not provide witness who had personal knowledge of positive drug tests and could testify to reliability of results); *Jefferson v. Bd. of Probation & Parole,* 95 Pa.Cmwlth. 560, 506 A.2d 495, 499 (1986) (hearsay laboratory report properly admitted into evidence and sufficient to support parole revocation).

{16} In New Mexico, in the administrative context of license revocation, we have held that, where extensive information concerning procedures used in testing a blood sample was included on a laboratory report form, the form was sufficient to establish a foundation for admission of the laboratory test. *See Bransford v. State Taxation & Revenue Dep't,* 1998–NMCA–077, ¶¶ 23–24, 125 N.M. 285, 960 P.2d 827. We have not, however, decided what requirements to impose for admission and sufficiency of laboratory reports in probation revocation proceedings. As noted above, in this case, the only information submitted to the trial court was the drug test results, the incomplete forms for chain of custody, and the testimony of Ms. Morgan. There was no evidence concerning the handling of the urine samples. For example, there was no evidence on chain of custody or on the laboratory procedures used in performing tests on the samples.

{17} Probation revocation hearings involve a conditional liberty interest in that, if probation is revoked, the defendant could face incarceration. We believe that a higher standard than mere submission of laboratory results should apply to such proceedings. In particular, we agree with the Fifth Circuit Court of Appeals statement of the minimum requirements for reliance on laboratory test results in revocation proceedings. *See United States v. Grandlund,* 71 F.3d 507, 511 (5th Cir.1995). In *Grandlund,* the Fifth Circuit held that in order to avoid reversal in revocation cases involving positive laboratory tests, the following must be provided to the court and to the defendant at least five days prior

to the revocation hearing and must be made part of the record of that hearing:

(1) copy of the report of each relevant laboratory test[;]

(2) [A] copy of the report on the chain of custody of each sample, including the date of collection, name of person(s) collecting and labeling same, and a description of the label[;]

(3) [A] copy of an affidavit by a responsible laboratory employee attesting to laboratory procedures, including laboratory chain-of-custody routines, whether all required procedures were followed regarding the subject sample(s), and the result(s) of the testing.

*Id.* at 511.

{18} We believe these minimum requirements will safeguard the rights of probationers in revocation proceedings. It is obvious that these minimum requirements were not met in the case before us. Therefore, remand is appropriate in order to allow a new hearing at which these procedures may be followed, if the necessary information is available. Of course, in such a hearing the trial court may consider any evidence which may properly be admitted.

{19} Because the remaining issues are likely to recur if Defendant's probation is revoked, we address them at this time.

*Evidence for Habitual Offender Proceedings*

*Identity and Sequencing*

■ {20} Defendant alleges that the supplemental information used in this case to enhance his sentence was lacking in that it did not include conviction dates for the prior voluntary manslaughter and trafficking convictions. Defendant also argues that there was no proof that he was the same person who was convicted of the three prior felonies. As noted above, the plea agreement contained an admission by Defendant that he was the same person convicted of three prior felonies, including voluntary manslaughter, trafficking cocaine, and trafficking heroin. Also, as noted above, Defendant specifically agreed that "presentation of this agreement to the Court evidencing the admitted prior felony convictions ... is and will be sufficient

evidence to prove the Defendant's status" as a fourth habitual offender. After the three prior offenses were listed, the plea agreement shows that Defendant agreed to waive "any collateral attack on the validity and effectiveness of each of the above felony convictions, including the present offense to which he is pleading guilty." At the habitual offender proceedings, the trial court took judicial notice of the plea agreement, the approval of the agreement by Judge Hall, and Judge Hall's determination that Defendant knowingly and voluntarily entered into the agreement.

{21} Defendant did not contest the sequencing of the prior convictions or his identity at the plea agreement hearing. Instead, Defendant waited until he was facing revocation of his probation to make any claim that the prior convictions were not properly presented. Pursuant to the plea agreement, Defendant expressly agreed that he was the same person who had been convicted of three prior felonies; that the prior convictions were for voluntary manslaughter and trafficking controlled substances; that the plea agreement, by itself, would suffice as proof of those prior convictions; and that presentation of the plea agreement would establish his status as a fourth habitual offender. Under these circumstances, Defendant waived his right to contest the validity of the prior convictions, or his status as a fourth habitual offender. *See State v. Brown*, 1999–NMSC–004, ¶ 14, 126 N.M. 642, 974 P.2d 136 (stating that waiver must be voluntary, and must be a knowing and intelligent relinquishment of a right; also stating that waiver depends upon the facts and circumstances of each case); *see also Hovey v. State*, 104 N.M. 667, 670, 726 P.2d 344, 347 (1986) (stating that "[D]efendants' rights, even constitutional rights, may be waived.").

### Mandatory Nature of Plea Agreement Sentencing Provisions

{22} Defendant claims that the plea agreement is ambiguous because it does not "encompass all the sentencing options" in the event of probation violation. Defendant argues that the plea agreement does not indicate that the State *will* file habitual offender proceedings, but instead states that it *may* file such proceedings in the event that Defen-

dant violates his probation. Defendant claims that a subsequent statement in the plea agreement indicating that the terms of his probation "are subject to modification in the event" he violates the conditions of the agreement, is also a statement of the law under NMSA 1978, § 31–21–15 (1989). Therefore, Defendant argues, the trial court had discretion to sentence him according to the provisions of Section 31–21–15, and was not bound by the language in the plea agreement. Under Section 31–21–15, Defendant argues, when a defendant violates his probation, the trial court may continue the original probation, revoke the probation, order a new probation, or require the defendant to serve the balance of the imposed sentence or any lesser sentence. Based on this, Defendant contends that the trial court had the discretion to sentence him to a sentence less than thirty-two years. Defendant also argues that there is nothing to show that the trial judge who presided over the plea proceedings understood that there would be a mandatory thirty-two year sentence in the event of a probation violation.

{23} The language of the plea agreement is quite clear. Defendant agreed to a specific stipulation that, "in the event habitual offender proceedings are filed," presentation of the agreement would be sufficient evidence to prove that Defendant was a fourth habitual offender "subjecting the defendant to a mandatory term of incarceration of EIGHT (8) years on offenses pled to" in the agreement. Defendant agreed that the sentences would be served consecutive to each other: "a conviction as a FOURTH HABITUAL OFFENDER will result in a sentence of THIRTY TWO (32) years which cannot be suspended or deferred in part or in total." There is no ambiguity in this language. The State filed habitual offender proceedings. Therefore, under the clear language of the agreement, into which Defendant entered knowingly and voluntarily, the agreement would serve as proof that Defendant was a fourth habitual offender, that the eight-year sentences for the crimes pled to would be enforced and would run consecutively, and that Defendant would be sentenced to serve thirty-two years. *See State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994) (stating

that "A plea agreement is a unique form of contract."); *State v. Santillanes,* 98 N.M. 448, 451, 649 P.2d 516, 519 (Ct.App.1982) (stating that unless there exists constitutional or statutory invalidity, plea agreements are binding upon both parties). There is no room for the trial court to have exercised discretion in sentencing Defendant.

*Supplemental Information*

{24} Defendant argues that only three prior crimes were included in the supplemental information, but his sentence was based on four prior felonies, including the residential burglary convictions, which formed the basis of the plea agreement. At the sentencing hearing, the State reported that it forgot to include the last count of residential burglary and stated that it "will file an amended supplemental information that will list the fourth count, there are four counts." The trial judge responded, "okay." As indicated, Defendant agreed that the residential burglary conviction would be included in any habitual offender proceedings. Because Defendant was on notice that the fourth offense would be included, he suffered no prejudice by its inclusion. *Cf. State v. Wesson,* 83 N.M. 480, 482, 493 P.2d 965, 967 (Ct.App.1972) (allowing amendment of information where there is no showing that defendant was prejudiced).

*Cruel and Unusual Punishment*

{25} As discussed above, under the plea agreement, because Defendant was found to have violated his probation, he was to be sentenced to thirty-two years. Defendant argues that this amounts to cruel and unusual punishment. We review this claim de novo. *See State v. Rueda,* 1999–NMCA–033, ¶ 5, 126 N.M. 738, 975 P.2d 351. The test regarding cruel and unusual punishment, as set out in *In re Ernesto M., Jr.,* 1996–NMCA–039, ¶ 22, 121 N.M. 562, 915 P.2d 318, is as follows: " '[W]hether in view of contemporary standards of elemental decency, the punishment is of such disproportionate character to the offense as to shock the general conscience and violate principles of fundamental fairness.' " (quoting *State v. Massey,* 60 Wash.App. 131, 803 P.2d 340, 348 (1990)). Defendant cites three reasons why the thirty-two year sentence satisfies this test. Defendant claims (1) the sentence was only for a probation violation for which Ms. Morgan recommended continued supervision; (2) the thirty-two year sentence was not set by the legislature; and (3) the purpose of the habitual offender statute is to prevent recidivism, and that purpose is not met here where Defendant was involved in treatment for his addiction, and that addiction is the reason he violated his probation.

{26} As we pointed out above, Defendant specifically agreed that he would be sentenced as a fourth habitual offender in the event that he violated his probation. The language in the agreement regarding Defendant's mandatory sentence for a probation violation complied with that in the Habitual Offender Act, NMSA 1978, § 31–18–17(D) (1993). Section 31–18–17(D) provides that a person who has incurred three or more prior felony convictions is considered a "habitual offender and his basic sentence shall be increased by eight years, and the sentence imposed by this subsection shall not be suspended or deferred." Under this statutory section, the amount of sentence enhancement is dependent on the number of prior felony convictions. *See State v. Haddenham,* 110 N.M. 149, 152, 793 P.2d 279, 282 (Ct.App. 1990). Defendant was convicted of four counts of residential burglary and had three prior felony convictions. Therefore, once Defendant agreed to consecutive sentences for the four burglary counts, under Section 31–18–17(D), Defendant's sentence would be thirty-two years, the sentence that he was given. This sentence is not cruel and unusual. *See State v. Harris,* 101 N.M. 12, 21, 677 P.2d 625, 634 (Ct.App.1984) (upholding forty-year sentence made up of four ten-year sentences for a fourth habitual offender convicted of two burglaries and two larcenies).

{27} Defendant was not punished for his probation violation. Defendant was punished for the underlying offenses. *See Jones v. Fraser,* 1998 WL 355341, *4 (E.D.N.Y.1998) (merely requiring defendant to serve original sentence following revocation was not cruel and unusual punishment where the original sentence was within statutory limits). Thirty-two years' imprisonment does not shock the general conscience or violate principles of

fundamental fairness given the number of Defendant's offenses and his history of recidivism. Under the plea agreement in this case, Defendant obtained the benefit of having charges dropped on seven out of eleven counts. The sentence in this case does not amount to cruel and unusual punishment.

**CONCLUSION**

{28} For the reasons discussed in this opinion, we affirm in part and we reverse in part. We reverse the trial court's finding that the laboratory tests, as presented at the revocation hearing, constituted sufficient evidence to support revocation of Defendant's probation. We remand to the trial court for a new hearing on that issue.

{29} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge and JAMES J. WECHSLER, Judge.