This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 31,157**

**FREDERICK J. MAES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Neil Candelaria, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**VANZI, Judge.**

{1}    Defendant Frederick Maes appeals from the district court order revoking his probation, enhancing his sentence under the habitual offender statute, and remanding him into custody. He contends that the district court (1) erred in revoking his probation based on a failure to pay his DNA fee; (2) erred in denying his request for continuance; and (3) lacked jurisdiction to find that Defendant violated his probation or, alternatively, that he had ineffective assistance of counsel. We affirm.

**BACKGROUND**

{2}    A grand jury indictment charged Defendant with residential burglary, larceny, conspiracy to commit residential burglary, or alternatively, conspiracy to commit larceny, based on events that occurred on July 23, 1999. Six months later, Defendant was charged by a separate grand jury indictment with escape from penitentiary or, alternatively, escape from jail, based on events occurring on May 25, 1999. The two cases were consolidated in the district court and, on February 9, 2000, Defendant entered into a repeat offender plea and disposition agreement in which he pled guilty to escape from penitentiary and admitted to the commission of eight separate felonies for which he was convicted between September 1985 and May 1999. The agreement provided that Defendant's sentence would run consecutive to a sentence in another 1998 case, which was consecutive to the sentence on yet another conviction Defendant was serving at the time. Ultimately, the district court sentenced Defendant to twenty-

six and one-half years of imprisonment, with ten and one-half years being discretionarily suspended. In exchange for the partial suspension of his sentence, Defendant was ordered to be placed on supervised probation for five years following his release from custody.

{3}     Defendant was released from prison and placed on probation. He was subsequently arrested for violating his conditions of release and, on May 11, 2010, the State filed a motion to revoke probation. The motion alleged that (1) when Defendant reported to his probation officer and was given a urinalysis (UA) drug test, Defendant tested positive for opiates and his vehicle contained pieces of plastic consistent with drug trafficking; (2) Defendant was using and selling drugs; (3) Defendant had failed to pay the DNA fee "as instructed"; and (4) Defendant had eleven prior violations of his probation conditions. At the September 10, 2010 hearing, the State withdrew the failed UA as a basis for the Defendant's probation violation because the results of the test were not reliable, and the district court found that there was no sufficient basis to find a violation based on Defendant's admitted use of Tylenol 4. The district court subsequently found that Defendant violated his probation based on the sole ground that Defendant had not paid the DNA fee.

{4}     On September 29, 2010, the district court entered an order revoking Defendant's probation. The court held a hearing on the habitual offender enhancement

on December 28, 2010, and on January 24, 2011, entered an order revoking Defendant's probation on the 2000 escape case, and sentenced him to the department of corrections for a total of seventeen years. After credit and a partial suspension of the sentence, Defendant's sentence requires him to serve a mandatory prison term of approximately nine years.

{5}     Because this is a memorandum opinion and because the parties are familiar with the procedural history and facts of this case, we reserve further discussion of pertinent facts for our analysis.

{6}     Defendant raises three issues on appeal. First, he argues that the district court erred in revoking his probation based on a failure to pay the DNA fee. Second, Defendant contends that the district court erred in denying him a continuance. Lastly, Defendant argues that the district court lacked jurisdiction or, in the alternative, his counsel was ineffective. We take each argument in turn.

**DISCUSSION**

**Probation Revocation for Failure to Pay DNA Fee**

{7}     Defendant's first argument on appeal is that the district court erred in revoking his probation based on a failure to make $10 monthly payments towards a $100 DNA fee. In a probation revocation proceeding, the State bears the burden of establishing a violation with reasonable certainty to satisfy the district court of the truth of the

violation, and need not be proof beyond a reasonable doubt. *State v. Sanchez*, 2001-NMCA-060, ¶ 11, 130 N.M. 602, 28 P.3d 1143. Thus, to satisfy its burden, the State must introduce proof which would incline "a reasonable and impartial mind" to believe that the defendant violated the terms of probation. *Id.* ¶ 13. On appeal, we review the district court's decision to revoke probation for an abuse of discretion. *See State v. Martinez*, 1989-NMCA-036, ¶ 5, 108 N.M. 604, 775 P.2d 1321. "To establish an abuse of discretion, it must appear that the [district] court acted unfairly or arbitrarily, or committed manifest error." *Id.*

{8}    We understand Defendant's arguments to be twofold. First, Defendant contends that he did not have adequate notice that the State would seek to revoke his probation based on his failure to make $10 monthly payments, or that monthly payments were required, and that there was insufficient evidence to establish that a probation violation had occurred. Second, he contends that there was evidence in the record that he was unable to pay the DNA fee and that he did not wilfully fail to do so and, therefore, the district court erred in revoking his probation. We are not persuaded by either of Defendant's arguments.

{9}    With respect to Defendant's claim that he did not have adequate notice of failure to pay the monthly DNA fee, we have previously said that a defendant is entitled to minimum due process rights in a probation revocation hearing. *See*

5

*Sanchez*, 2001-NMCA-060, ¶ 13 (acknowledging a right to written notice of the violation, disclosure of evidence against the defendant, and the right to confront and cross-examine adverse witnesses). Here, the second motion to revoke probation contained three details of violation including a condition that Defendant would "pay the DNA [f]ee in the amount of $100.00 *as instructed*." (Emphasis added.) The report further stated that, although he had been reporting to probation and parole authorities since September 29, 2009, Defendant had "yet to make a payment towards his DNA [f]ee." Lastly, the report noted that Defendant would have an opportunity to provide his version of the allegations at the probation revocation hearing.

{10}   In addition to receiving notice of the violation, and to the extent Defendant raises a sufficiency of the evidence argument, Defendant's supervising probation officer testified at the hearing about Defendant's failure to pay the monthly DNA fee. Specifically, she testified that when a probationer is ordered to pay any kind of fee, she goes over that requirement with the offender at the time of the initial visit. In this case, on the first day he reported, the probation officer went over the conditions of probation as well as the intensive supervision program (ISP) agreement with Defendant. She testified that Defendant was ordered to pay a $100 DNA fee, she went over the DNA fee with him, and she told Defendant "that he had to pay at least $10 per month toward the DNA fee, or he could pay if off immediately." During cross-

examination, defense counsel questioned the probation officer only about the reference to the $100 DNA fee on the ISP agreement, which had been introduced as State's exhibit 1. He did not question her further about what she told Defendant or about any notations she may or may not have made in her own files. Nor, as we discuss more fully below, did counsel request the probation officer's files which, she indicated at the hearing, showed that she had gone over the conditions with Defendant. On redirect, the probation officer reiterated that she had instructed Defendant to pay $10 per month toward his DNA fee and that he had not done so. We conclude that the motion to revoke probation and accompanying notice of violation was sufficient to provide Defendant with notice of the allegation. Further, the uncontested testimony of the probation officer provided sufficient facts to support the district court's finding that Defendant had violated his probation.

{11}    Defendant's second argument is less clear. On one hand, defense counsel told the district court during the probation revocation hearing that "had [Defendant] known that he was obligated to pay the $10 a month, he would have paid the $10 a month." On the other hand, Defendant contends that he was unable to pay the DNA fee. Defendant concedes that he did not testify during the hearing concerning his inability to pay the DNA fee—either in full or $10 per month. However, he contends that his

statement to the court at allocution provided sufficient evidence to support a finding that he was unable to pay. We disagree.

{12}    As an initial matter, we note that the report of probation violation specifically advised Defendant that he would have an opportunity to provide his version of the allegations at the hearing. He apparently elected not to do so. While we recognize that the decision not to take the stand may have been a tactical maneuver, it left Defendant without the opportunity to present evidence during the course of the hearing concerning his inability to pay the DNA fee. Defendant's statements to the court during allocution—and after the court had already ruled that Defendant violated his conditions of probation by not paying the DNA fee—was neither sworn testimony nor testimony that was subject to cross-examination. As the district court pointed out when defense counsel began to argue that Defendant was unable to pay the DNA fee when he was in prison, "the conclusion of presentation of the evidence is done." Consequently, once the State presented evidence that Defendant failed to pay the DNA fee, Defendant's burden was to show that the failure to pay was due to indigency and was not intentional, that he made some good faith effort to pay, or to offer some evidence in mitigation against revocation of his sentence. Because he provided no evidence to show that he would be forced to violate his probation because of his inability to pay the DNA fee, we conclude that the district court did not act

8

unfairly, arbitrarily, or in manifest error in revoking Defendant's probation. *See State v. Guthrie*, 2011-NMSC-014, ¶ 35, 150 N.M. 84, 257 P.3d 904 (reiterating that "only *contested* relevant facts must be evaluated during a hearing").

{13} Defendant relies on *State v. Jimenez*, 1991-NMSC-041, 111 N.M. 782, 810 P.2d 801, and *State v. Parsons*, 1986-NMCA-027, 104 N.M. 123, 717 P.2d 99, for the proposition that the district court was required to make a finding concerning his ability to pay. We are not persuaded by Defendant's reliance on these cases. First, in *Jimenez*, the parties *agreed* that the defendant's failure to pay restitution was caused by his inability to pay because of his financial situation. 1991-NMSC-041, ¶ 5. That is not the case here where there was no agreement between the parties and Defendant provided no contrary evidence or an explanation of why he could not make the payments. Further, Defendant concedes that this Court in *Parsons*, held that evidence of failure to pay by itself is sufficient to find a willful violation where a "defendant fails to present evidence of his inability to pay a fine or costs[.]" 1986-NMCA-027, ¶ 25. The district court's decision revoking Defendant's probation is affirmed.

**Motion for Continuance**

{14} The granting or denial of a continuance is within the sound discretion of the district court, and the burden of establishing abuse of discretion rests with the defendant. *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. The

9

defendant must show not only that the court abused its discretion but also that such abuse prejudiced the defendant. *State v. Nieto*, 1967-NMSC-142, ¶ 5, 78 N.M. 155, 429 P.2d 353. Our Supreme Court has stated that "[t]here are a number of factors that [district] courts should consider in evaluating a motion for continuance, including the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion." *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

{15}    Defendant argues that the district court erred in denying his motion for continuance so that he could file a motion for new trial or to reconsider based on newly discovered evidence. In particular, when Defendant appeared at his habitual trial and sentencing hearing on December 28, 2010, defense counsel told the court that he had issued a subpoena to the probation officer on December 10th, and that he had given her fifteen days to respond. According to counsel, the probation officer did not appear because she "didn't think she had [t]o show up." However, she sent defense counsel documents that, he said, "would indicate there is information contained in that file that would show she wasn't quite frank with the [c]ourt, in terms of [Defendant's]

10

obligation to pay a $10 DNA fee." Those documents do not appear to have been introduced at the hearing and are not part of the record on appeal.

{16} The district court heard arguments from both counsel and from Defendant. The court noted that the "records could have been subpoenaed and reviewed in anticipation that the probation officer would testify in the original hearing [on September 14, 2010,]" but apparently that did not happen as the court was never presented with a request or order to disclose the probation officer's file. The district court also stated that it had not received a formal request for a new trial based on newly discovered evidence, and that it was not going to give defense counsel a continuance because it had already done so. Based on our review of the record, no motion for continuance or new trial was ever filed before or after the December 28, 2010 hearing.

{17} In sum, Defendant apparently made no attempt to subpoena the probation files before the probation revocation hearing on September 14, 2010. Further, defense counsel did not question the probation officer about her files or ask that they be produced at the hearing. Nor did Defendant testify or present any of his own witnesses or enter any documentary evidence at the revocation hearing contesting the probation officer's testimony that he was required to pay a $10 per month DNA fee. Finally, we observe that Defendant did not timely request the records between the September 14, 2010 hearing and the December 28, 2010 sentencing hearing. Therefore, at the time

11

of the sentencing hearing, he did not provide the district court with any documents or sworn affidavits contradicting the probation officer's earlier testimony. And no subpoena issued for the probation records, even after the December 28, 2010 hearing and prior to entry of the court's order on January 4, 2011. In our view, the fact that Defendant does not dispute that the files have been available throughout this period brings into question whether the information can even qualify as newly discovered evidence. Without reaching that issue however, based on the above, we conclude that the district court did not abuse its discretion in declining to allow a continuance of the habitual trial and sentencing hearing.

**Lack of Jurisdiction and Ineffective Assistance of Counsel**

{18}    Pursuant to *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶ 24, 103 N.M. 655, 712 P.2d 1, Defendant argues that the district court lacked jurisdiction to hear the probation issue in his case. Defendant argues that "his probation for the 2000 escape case should have been deemed complete when he completed his sentence in the 1998 cases, on or about August 4, 2009." In the alternative, Defendant argues that he received ineffective assistance of counsel in accepting his plea agreement. We are not persuaded.

{19}    We review jurisdictional and legal issues under a de novo standard of review. *State v. Heinsen*, 2005-NMSC-035, ¶ 6, 138 N.M. 441, 121 P.3d 1040. Further, for

claims of ineffective assistance of counsel raised for the first time on appeal, we conduct a de novo review based on facts that are part of the record. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. We begin with Defendant's jurisdictional argument.

{20} On March 1, 2010, Defendant filed a motion in the district court clarifying probationary period for the 2000 escape in which he noted that his probation was supposed to have begun in June 2007. Then, shortly before the September 14, 2010 hearing, Defendant filed a motion to dismiss petition to revoke probation and petition for writ of habeas corpus, arguing that the sentence in the 2000 escape should have been completed at the same time he completed his sentence for the 1998 cases, on or about August 2009. The relevant portion of Defendant's repeat offender plea and disposition agreement dated February 9, 2000, states that:

> [t]he sentence in CR 00-00117 shall run consecutive to the sentence in CR 98-03972 (which is already consecutive to the sentence Defendant is presently serving in CR 98-01816) and that this will apply at initial sentencing and for all subsequent criminal proceedings, for an exposure of nine (9) additional years as to CR 00-00117, which the State agrees shall be suspended at initial sentencing. There are no other sentencing agreements.

Further, the judgment and sentence subsequently entered on March 29, 2000, provides that Defendant's sentence "is to run consecutive to sentences received in CR98-3972 and CR 98-1816." We note also that at the probation violation hearing on September

14, 2010, the district court clarified that the probation officers started Defendant's probation "earlier, even though the [c]ourt had ordered that it was to be consecutive, and his probation actually started June 10th of 2007." As a result, the district court granted partial credit toward the 2000 escape case and suspended 1,730 days of Defendant's sentence on the probation violation.

{21}     Defendant makes no real argument on appeal that his probation period on the escape case should have been completed at the same time he completed his sentence for the 1998 cases upon his release from prison on or about August 2009, except to say this was his "understanding of the plea agreement based on his advice from counsel." However, it is clear from the plea and disposition agreement, as well as the judgment and sentence and the district court's adjustment, that Defendant's probationary period began on June 10, 2007. And because his probation was for a five-year period, Defendant was still on probation when the State filed the second motion to revoke probation on May 11, 2010. Accordingly,  the district court had jurisdiction to consider the State's motion and to enter the January 24, 2011, probation revocation order.

{22}     Defendant contends that, in the alternative, we should remand this case "for an evidentiary hearing to determine whether he received effective assistance of counsel in accepting his plea agreement." As we have noted, "[w]hen an ineffective assistance

14

claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *Roybal*, 2002-NMSC-027, ¶ 19 (citing *State v. Swavola*, 1992-NMCA-089, ¶ 3, 114 N.M. 472, 840 P.2d 1238).

{23} Here, Defendant does not point to any evidence in the record concerning counsel's conduct or his understanding of the plea agreement, and Defendant makes only an unsupported assertion that he believed he completed his probation in all the cases upon his release from prison in August 2009. Given the lack of any facts to consider in this appeal, we conclude that the proper procedure is for Defendant to seek relief in a habeas corpus proceeding. *See State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 ("Without a record, we cannot consider [a d]efendant's claim of ineffective assistance of counsel on direct appeal. [The d]efendant's proper avenue of relief is a post-conviction proceeding that can develop a proper record." (citation omitted)); *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the [district] court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus.").

15

**CONCLUSION**

{24}    We affirm the district court's revocation of Defendant's probation.

{25}    **IT IS SO ORDERED.**

_____
                                    **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**M. MONICA ZAMORA, Judge**