This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **No. A-1-CA-35021**

**ANDREW MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Michael E. Martinez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOHNHOFF, Judge.**

{1}     Andrew Martinez (Defendant) appeals the district court's August 14, 2015, order revoking his probation. The district court revoked Defendant's probation based on fingerprint and other evidence that he had robbed a 90-year-old woman by getting into her vehicle and demanding that she hand over her credit cards, keys, and cell phone. On appeal, Defendant argues that (1) the fingerprint evidence from Victim's vehicle was unreliable and that the district court erred in concluding that the fingerprints were Defendant's; and (2) even if the fingerprints were Defendant's, viewed in the context of other evidence, they do not establish to a reasonable certainty that he was involved in the robbery. This is a memorandum opinion and because the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the issues raised. For the following reasons, we affirm.

**BACKGROUND**

{2}     In 2009 a grand jury indicted Defendant for six offenses, including armed robbery. Defendant ultimately entered into a plea and disposition agreement, pleading guilty to the armed robbery and conspiracy to commit armed robbery. He also pleaded guilty to three other separate robberies and two related conspiracy to commit robbery charges. The district court sentenced Defendant to eighteen years incarceration, suspending all but five years and placing Defendant on five years of probation

2

following his release. Upon release, Defendant violated his probation three times and was given probation sanctions of continued probation for testing positive for and admitted use of THC and cocaine.

**{3}** On October 22, 2014, the State filed a motion to revoke Defendant's probation, alleging a violation of the standard condition of probation requiring Defendant not to violate state law. The State alleged that on June 7, 2014, Defendant and an accomplice had robbed a woman who was sitting in her vehicle in the driveway of her home.

**{4}** On January 29, 2015, the district court held a probation violation hearing. Victim testified on direct examination that she did not see the face of the robber who entered her vehicle. On cross-examination, Victim testified that the robber entered her vehicle through the rear driver's side door and Defense counsel asked Victim whether, during her initial interview following the robbery, she had stated that the robber had entered the vehicle from the passenger side door. Victim testified again that the robber entered into the vehicle from the door directly behind her.

**{5}** The prosecutor then called Officer Neiberger, a field investigator with the crime lab for the Albuquerque Police Department who collected the fingerprints off of Victim's vehicle. Officer Neiberger testified that as part of his duties he regularly collected latent fingerprints from crime scenes. He stated that he had been collecting fingerprints nearly every day for the past five years. Officer Neiberger lifted

fingerprints off the exterior of the rear passenger side exterior door handle, the interior rear passenger side window, and a support column between the passenger side doors.

{6}     The prosecutor then called Officer Jamie Mueller, a latent print examiner with the Albuquerque Police Department. Officer Mueller was qualified by the court as an expert in latent fingerprint examination without objection. On direct examination, Officer Mueller testified that he has compared known prints to latent prints hundreds of times. He testified that he enters the latent print in the Automated Fingerprint Identification System (AFIS), which plots minutia points on the latent print, which he then verifies by his own physical inspection. After verifying, he then has the system do a search and it provides "applicants," known prints that are similar to the unknown latent prints. He further testified that it is up to him to determine by his own comparison if any of the "applicants" is a match to the latent print. Officer Mueller then stated that after entering the latent prints from the scene of the robbery into the system, he had an AFIS "hit," otherwise known as a ten print card. Officer Mueller was then able to match four different latent prints to four fingers on the ten-print card; the fingerprints on the ten-print card belonged to Andrew Martinez. He testified that he was one hundred percent certain that it was a match, and that, if he felt that he was not certain, then he would not have called it an identification.

{7} On cross-examination, defense counsel established that Officer Mueller did not lift the prints himself or visit the crime scene, and lacked observation of the surfaces that the prints were lifted from. Defense counsel further established that AFIS assigns a score between zero to ten thousand based on similarities between the latent print and the known print. In this case, the top two scores were 2,585 and 2,555, which were different individuals. Officer Mueller examined the prints that scored 2,585 with a magnifying glass and a comparator (lighted magnification which reflects on a screen providing a side-by-side comparison of the latent print and the known print) and had a clear match, but did not examine the prints that scored 2,555. Officer Mueller then testified that once he completed his report another qualified examiner reviewed his results. Defense counsel then questioned Officer Mueller about studies that question the science underlying fingerprinting. Defense counsel discussed a scientific report that addressed whether human judgment is subject to different types of bias, asking Officer Mueller if it would surprise him to learn that the report found evidence that fingerprint examiners are subject to bias, to which Officer Mueller responded that he has read multiple research papers on the subject matter. Defense counsel then asked, "[Y]our position is that when you have actually made an identification you can claim [one hundred] percent accuracy?" Officer Mueller responded that he could make that claim and that he disagrees with scientific reports that claim one hundred percent

accuracy is not scientifically plausible. "Just because they publish it doesn't mean I have to agree with them."

{8}   In closing, the prosecutor argued that there could be no dispute that the prints lifted from the robbed vehicle belong to Defendant. The prosecutor contended that defense counsel's arguments—that fingerprint identifications are unreliable and that Officer Mueller was biased—lacked merit. The prosecutor urged, "[t]here is no reason why [Defendant's] prints should be anywhere near [Victim's] car." Defense counsel then argued that there were inconsistencies based on Victim's testimony that the robber entered on the rear driver's side of the vehicle, but the fingerprints of Defendant were lifted from the rear passenger side of the door. Defense counsel further argued that Defendant's print match was only twenty-five percent considering he had a score of 2,585 out of 10,000.[1]

{9}   The district court ruled that the expert testified that the prints from the car were in fact Defendant's prints and that, notwithstanding defense counsel's cross-examination about the validity of fingerprints, the court believed it was a valid method. The court further stated that Defendant's prints had no business being in Victim's vehicle and that they tied him to the robbery; thus, he violated his probation.

---

[1]Defense counsel never offered any evidence or provided an explanation as to the scoring system and significance of the numbers on the ten thousand point scale.

**DISCUSSION**

{10}    At a probation revocation hearing, the State must establish a violation of the terms of probation with reasonable certainty. *State v. Sanchez*, 2001-NMCA-060, ¶ 13, 130 N.M. 602, 28 P.3d 1143. To satisfy this burden, the State is required to introduce proof that would incline "a reasonable and impartial mind" to believe that the defendant violated the terms of probation. *Id*. (internal quotation marks and citation omitted). "The proof of a violation of a condition of probation need not be established beyond a reasonable doubt." *State v. Martinez*, 1989-NMCA-036, ¶ 4, 108 N.M. 604, 775 P.2d 1321. On appeal, we review the district court's decision to revoke probation for an abuse of discretion. *Id*. ¶ 5. To establish an abuse of discretion, it must appear that the district court acted unfairly, arbitrarily, or in manifest error. *Id*. In reviewing the sufficiency of the evidence to support a probation violation, this Court reviews "the evidence in the light most favorable to the [State], indulging all reasonable inferences and resolving all conflicts to uphold the [district] court's decision." *In re Bruno R*., 2003-NMCA-057, ¶ 9, 133 N.M. 566, 66 P.3d 339.

**A.    The District Court Did Not Abuse Its Discretion in Relying on the Fingerprint Evidence and Officer Mueller's Expert Opinion That the Fingerprints on the Vehicle Belonged to Defendant**

{11}    Defendant asks this Court to reverse the district court's finding that Officer Mueller's testimony was valid and reliable. Significantly, however, Defendant does

not assert that the expert's testimony was inadmissible. Thus, Defendant's argument is directed solely to whether the district court should have believed the expert's opinion that the latent fingerprints at issue were produced by Defendant. Defendant essentially argues that the district court should not have believed this testimony because Officer Mueller tested only the top-scored fingerprints and not the other "applicant" fingerprints and he was biased in that he knew that the top-scored fingerprints belonged to Defendant.

**{12}** Determination of the credibility of witnesses, however, is the province of the trier of fact. *See Evans v. N.M. Taxation & Revenue Dep't*, 1996-NMCA-080, ¶ 9, 122 N.M. 216, 922 P.2d 1212 (noting that "[a] long line of New Mexico cases reserves the determination of witness credibility to the fact[-]finder"). We do not reweigh the evidence and instead "defer to the district court when it weighs the credibility of witnesses and resolves conflicts in witness testimony." *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482; *see State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156.

**{13}** Once Officer Mueller's opinion was admitted into evidence, the district court was free to give the opinion whatever weight it saw fit and could reject Defendant's arguments. There is no indication in the record that the district court wholly refused to consider defense counsel's extensive cross-examination on these points. Defense

counsel could have presented a rebuttal fingerprint expert but did not. It was the district court's role to decide whether Officer Mueller's opinion was correct or biased and to evaluate the strength of his conclusions; we will not disturb that decision.

{14} In sum, because it is the role of the district court and not this Court to determine the weight and credibility to be accorded testimony received into evidence, we affirm the court's determination of the validity, and acceptance of, the fingerprint identification.

**B.     The District Court Did Not Abuse Its Discretion in Ruling That the Fingerprint and Other Evidence Established With Reasonable Certainty That Defendant Was Involved in the Robbery**

{15} Defendant asserts that the evidence does not establish beyond a reasonable certainty that Defendant was involved in the robbery, relying upon the inconsistency between the forensic evidence and the testimony of Victim. Victim testified that two men were involved in the robbery, that one of the men approached her car from the passenger side but never got into the car, and that the other approached from the driver side and got into the car using the rear door on that side of the car. The witness testified that she saw the man on the passenger side of her car, but did not see the man who got into her car from the driver's side. She also testified that Defendant was not the man she saw on the passenger side of her car. The latent fingerprints that were matched to Defendant, however, were found on the passenger side of the car: one print

9

or set of prints was taken from the interior surface of the rear passenger side window, another was taken from the exterior handle of the rear passenger side door, and another from the support column behind the passenger door. Defendant argues from these facts that he cannot have been either of the participants in the robbery because the witness testified that he was not the person she saw on the passenger side of the car, which is the side of the car where his fingerprints were found.

{16} As noted earlier, proof of a probation violation need not be established beyond a reasonable doubt. *Martinez*, 1989-NMCA-036, ¶ 4. Instead, the violation must be established with a reasonable certainty, such that a reasonable and impartial mind would believe that the defendant violated the terms of probation. *Sanchez*, 2001-NMCA-060, ¶ 13. Ultimately, the question before this Court is whether the evidence presented was sufficient to convince a reasonable and impartial mind that Defendant participated in the robbery. Fundamentally, and as the district court noted below, Defendant's fingerprints "had no business being in the car[.]" In addition, Victim did not testify which door the robber used to exit the vehicle, or to re-enter the vehicle to take Victim's cell phone and then re-exit. She testified only about which side the robber initially entered the vehicle. Moreover, the district court could have discounted Victim's testimony about which side of the vehicle the robber used to initially enter the car based on the fact that she was frightened at the time of the robbery. Thus,

Victim's testimony that the robber initially entered the car on the left side did not necessarily negate a scenario that would explain the presence of Defendant's fingerprints on the interior and exterior sides of the right rear door of Victim's car.

{17} The evidence presented was reliable and sufficient to support the district court's revocation of Defendant's probation, as a reasonable mind could decide that Defendant violated the terms of his probation by participating in a robbery. *See Sanchez*, 2001-NMCA-060, ¶ 13. Under these circumstances, the district court did not abuse its discretion in concluding that Defendant had violated his probation.

**CONCLUSION**

{18} For the foregoing reasons we affirm the district court's order revoking Defendant's probation.

{19} **IT IS SO ORDERED.**


_____
**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**


_____
**EMIL J. KIEHNE, Judge**


_____
**DANIEL J. GALLEGOS, Judge**