2003-NMCA-057

66 P.3d 339

In the Matter of BRUNO R., a Child, Defendant–Appellant.

Nos. 22,828, 22,829.

Court of Appeals of New Mexico.

Feb. 10, 2003.

Certiorari Denied, No. 27,958, April 2, 2003.

Patricia Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee State of NM.

John B. Bigelow, Chief Public Defender, Samantha J. Fenrow, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

KENNEDY, Judge.

{1} Bruno R. (Child) appeals the determination of his probation revocation hearing where the trial court issued two Orders Revoking Probation, which have been consolidated on appeal. Following a hearing at which the trial court heard witnesses' testimony, it ruled that Child violated conditions of his Probation Agreements prohibiting the use of drugs and travel outside the state without prior approval from Child's Juvenile Probation/Parole Officer (JPPO). The trial court dismissed a claim that Child violated the clause in his Probation Agreement prohibiting Child from misbehaving in school.

{2} On appeal, Child argues that the trial court's determination to revoke his probation should be reversed on three grounds: (1) the trial court erred in finding that he violated his probation by leaving New Mexico without his JPPO's permission because the JPPO failed to provide emergency contact information for Child's mother to use should an emergency situation arise during the JPPO's non-business hours; (2) Child's alleged admission that he used marijuana lacked the necessary corroborating evidence required by the Children's Code and therefore the court should not have found that he violated probation based on his admission alone; and (3) the State did not prove Child was on probation because it failed to enter the Probation Agreement into evidence during the hearing.

{3} We reverse the trial court's decision to revoke Child's probation: (1) Child did not willfully violate his Probation Agreement when he left the state with his mother; and (2) Child's out-of-court admission that he used marijuana was not supported by sufficient corroborating evidence as required by the procedures set forth in the Children's Code, the Rules of Evidence, or the corpus delecti rule.

**BACKGROUND**

{4} Child is a special education student who has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). He has been in treatment since he was about seven years old and was sixteen years old at the time of the hearing to revoke his probation. In the summer of 2000, Child was placed on probation for possessing an alcoholic beverage by a minor contrary to NMSA 1978, § 60–7B–1(C) (1998) and aggravated assault with a deadly weapon in violation of NMSA 1978, § 30–3–2(A) (1963). Child's mother was specifically made a party to both the delinquency petitions and the Probation Agreements. The terms of Child's Probation Agreement required him to steer clear of alcohol, drugs, and weapons, as well as to avoid being in the presence of any person using or possessing such things. Child was also forbidden to leave Doña Ana County

without first obtaining permission and a travel pass from his JPPO.

## Leaving Dona Ana County

{5} On Saturday, September 8, 2001, Child's uncle (mother's brother-in law) died in Arizona. Child's mother determined that she would go to the funeral that weekend and that Child would accompany her. She attempted to contact Child's JPPO, Abe Martinez, but since the death occurred on a weekend, she was unable to do so. Martinez does not have Saturday office hours and never provided any emergency contact information to Child or his mother, and Child's mother, therefore, had no way to get in touch with Martinez during non-working hours.

{6} Martinez testified that Child's mother left a message on his voice mail explaining the situation; specifically, her message informed Martinez that there was a family emergency in Arizona, and that she and Child were leaving the state. Child's mother testified that she also contacted Donny Heath, a community corrections surveillance officer assigned to work with Child and his family, to inform him that she and Child were going to the funeral. Heath was not called as a witness. Child's mother testified that during the course of her conversation with Heath, she explained the situation and she formed the impression that Heath gave her permission to go to Arizona with Child. However, neither the record nor the mother's testimony established that Heath actually gave Child's mother permission to leave the state. Rather, Child's mother testified to nothing more than that Heath never said she could not take Child on a trip out of the state. The parties do not dispute the fact that Child left Doña Ana County without obtaining authorization for the trip from Martinez. Additionally, the record does not indicate that Child's mother attempted to contact Martinez the following Monday or that Heath had the authority to act as an after-hours surrogate for Martinez.

## Drug Use

{7} Martinez appeared at the hearing and testified, but he forgot to bring his file, and he had no documentary evidence to present to the court. Martinez testified that in August and September 2001, Child admitted to Martinez that he used marijuana in violation of the Probation Agreement. Martinez testified that based on Child's alleged admissions, he ordered two drug tests to be administered. According to Martinez's testimony at the hearing, the two tests came back positive for marijuana. On the witness stand, Martinez did not know the name of the lab that performed the tests, only that Child's urine samples were sent to Albuquerque for analysis. No evidence was presented whether they were screening tests, or whether any screening tests had been confirmed by subsequent analysis. No test results were presented to the court as evidence.

{8} Martinez testified and was cross-examined by Child's attorney, and the paucity of the evidence was factually established. Child's attorney argued in her motion to dismiss and in her closing argument that the lack of confirming tests or evidence of test results at all was insufficient evidence upon which to base a finding of a probation violation. At the close of the hearing, when the court recited its basis for finding the marijuana violation, the court's only comment was that Child "told Mr. Martinez" he had used marijuana. The trial court found that Child violated his Probation Agreement both by leaving the state without permission and by using marijuana. The disposition hearing resulted in Child's probation for his aggravated assault and possession of alcohol charges being increased from one to two years.

## DISCUSSION

### Standard of Review

{9} In reviewing a sufficiency of the evidence contention, we view the evidence in a light most favorable to the prosecution, indulging all reasonable inferences and resolving all conflicts to uphold the trial court's decision. *State v. Sanders*, 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). Nonetheless, we apply a two-step process, reviewing the evidence first in accordance with the standard just stated, and determining next whether the evidence, viewed in this manner, could persuade a rational trier of fact of guilt on each essential element of the charge. *Id.* Applying this standard of review, we hold

that the evidence establishing the violations was insufficient as a matter of law and reverse the trial court.

## A Probation Violation Requires Willful Conduct

{10} Child argues that he left the state without permission from Martinez because Martinez failed to provide emergency weekend contact information to Child or his mother. In addition, Child avers that his mother reasonably believed Heath was Martinez's agent, vested in Martinez's absence with apparent authority to allow mother to take Child to Arizona. We need not address this second contention as we agree with Child that his leaving the state was not willful.

{11} We believe that Child was placed in an untenable position when his mother decided to go to his uncle's funeral. On the one hand, his Probation Agreement was explicit that he was not permitted to leave the state without prior approval by Child's JPPO. On the other hand, the same agreement explicitly required Child to obey his mother. To establish a violation of a probation agreement, the obligation is on the State to prove willful conduct on the part of the probationer so as to satisfy the applicable burden of proof. *See State v. Parsons,* 104 N.M. 123, 128, 717 P.2d 99, 104 (Ct.App. 1986). This same standard applies to juvenile cases. Before a court can find Child to have violated his probation, evidence tending to establish his own willful conduct beyond a reasonable doubt must have been presented to the court. NMSA 1978, § 32A-2-24(B) (1993); *In re Aaron L.,* 2000-NMCA-024, ¶ 24, 128 N.M. 641, 996 P.2d 431 ("Children's Code and the Children's Rules both mandate that juveniles be afforded the same rights and procedures in revocation proceedings that they are afforded in delinquency proceedings.").

{12} Here, the evidence does not support a finding that satisfies this burden. In this case, a party to the Probation Agreement, namely Child's mother, acted willfully to violate it, but no evidence was presented that Child did anything other than obey his mother. All the evidence in this case centers on the mother's decisions and actions. Child's mother decided to leave the state and take Child with her, she made assumptions about Heath's authority to give her permission to leave that were consistent only with her needs, and it was Child's mother who failed to follow up with Martinez the following Monday (or thereafter). No evidence in this case shows that Child himself acted in any willful fashion save going along with what his mother was doing.

{13} In *State v. Martinez,* 108 N.M. 604, 606–07, 775 P.2d 1321, 1323–24 (Ct.App. 1989), the Court relied on *Humphrey v. State,* 290 Md. 164, 428 A.2d 440, 443–44 (1981) for the proposition that if violation of probation is not willful, but resulted from factors beyond a probationer's control, probation may not be revoked. This Court accordingly found that the defendant violated his probation because his probation officer testified that, had the defendant called on the next business day after a weekend to notify the officer of a problem, it would have been acceptable to leave the state in an emergency situation without prior notification. *Id.* at 606–07, 775 P.2d at 1323–24. In this case, the issue of calling on the first available business day never came up, either by way of a question by the defense to Martinez or by way of affirmative testimony by Child's mother showing she tried to call on Monday, September 10, 2001 to explain the situation.

{14} Thus, *Martinez,* while grinding an exculpatory lens for viewing Child's conduct, is illustrative of Child's mother's own negligence in her dealings with the JPPO. This said, Child's mother is not the person against whom the State has to present evidence showing beyond a reasonable doubt that a violation was committed in this case. Here, all evidence shows that Child's mother was responsible for making the decision to leave the state. No evidence shows that Child was acting willfully or intentionally when he left with his mother. Therefore, insufficient evidence was presented to prove that Child willfully violated the condition of his probation that prohibited him from leaving the state without prior approval from the JPPO. The finding of the trial court is not supported by substantial evidence, and is reversed.

### The Corpus Delecti Rule, Substantial Evidence, and Acceptable Scientific Practice

{15} Child admitted to Martinez that he used marijuana. As a result, Martinez ordered Child to submit to drug testing. The testing apparently produced positive results. Martinez, however, did not bring his file to the hearing or prepare anything for the hearing, other than his own testimony, to establish that the urine tests resulted positive for marijuana. Moreover, Martinez did not "recall all the particulars" of Child's alleged admission. Martinez recalled that the tests were performed by a lab in Albuquerque, but he was not able to recall the laboratory's name. Martinez remembered that two urine tests had yielded positive results, but he could not testify that the results had been confirmed by further testing. No results had been tendered to the defense as discovery, nor were any submitted for admission as evidence. The State never called the witness from "Drug Detection Services" in Albuquerque who was included on the State's witness list.

{16} We established prerequisites for admission of urine test results in adult probation violation hearings in *State v. Sanchez*, 2001–NMCA–060, ¶ 17, 130 N.M. 602, 28 P.3d 1143, and none of those conditions expressed in our opinion have been satisfied here. Martinez's statements concerning his recollection that the tests were positive for marijuana do not satisfy any requirements for admissibility. As described by him, evidence of testing is no better than hearsay where he cannot testify to either test results or the protocol used. Thus, this evidence is entirely based on facts not presented for judicial scrutiny. Martinez did not have, nor did he provide to the defense, records concerning the urine sample's chain of custody, a statement by the person performing the test concerning standards and procedures, or the records of the test itself. Here, the State failed to follow the minimum requirements for reliance on laboratory test results in the probation revocation proceedings as set forth by *Sanchez*, 2001–NMCA–060, ¶ 17, 130 N.M. 602, 28 P.3d 1143. Therefore, since the evidence regarding the drug tests is insufficient as a matter of law to establish that Child used marijuana to meet the *Sanchez* standards, we need not decide whether a higher standard should apply here.

{17} Without proof of drug testing, the admission of Child cannot stand as the sole evidence of the violation. Extrajudicial admissions or confessions are not sufficient as evidence that a child committed delinquent acts absent other corroborating evidence. NMSA 1978, § 32A–2–14(G) (1993); *Doe v. State*, 94 N.M. 548, 549, 613 P.2d 418, 419 (1980). This protection extends to probation violation hearings as well. Section 32A–2–24(B) (requiring that proceedings to revoke probation be governed by the procedures, rights, and duties applicable to proceedings on a deliquency petition); *Aaron L.*, 2000–NMCA–024, ¶¶ 11, 14, 128 N.M. 641, 996 P.2d 431 (discussing the rights under the Children's Code as they apply to probation revocation hearings).

{18} The rationale for Section 32A–2–14 is to provide the court with reliable evidence, and to protect a child's rights. Because children are particularly susceptible to overreaching tactics, especially by those in a position of authority, the legislature has provided juveniles with augmented procedural protections. *State v. Javier M.*, 2001–NMSC–030, ¶ 39, 131 N.M. 1, 33 P.3d 1 (finding that the Children's Code provides children with greater protection with regard to police interrogations than is afforded to adults); *State v. Erickson K.*, 2002–NMCA–058, ¶ 18, 132 N.M. 258, 46 P.3d 1258. In addition to Child's young age, he has special needs and is taking medication. Martinez was aware that Child was diagnosed with ADHD and that Child is subject to an Individual Education Plan due to Child's deficiencies. Child's age coupled with his behavioral and learning disabilities renders the use of his admission particularly questionable.

{19} In addition to the Children's Code's enhanced procedural provisions, Rule 10–115 NMRA 2002 states that "[e]xcept as otherwise provided by these rules, the New Mexico Rules of Evidence shall govern all proceedings in the children's court." Rule 10–232(C) NMRA 2002 provides that "[p]roceedings to revoke probation shall be conducted in the same manner as proceedings on peti-

tions alleging delinquency." *See* Rule 10–227 NMRA 2002 (stating that adjudicatory hearings in deliquency cases are to be conducted in the same manner as trials under the rules of criminal procedure); *Erickson K.*, 2002–NMCA–058, ¶ 9, 132 N.M. 258, 46 P.3d 1258.

{20} The State argues that Child failed to raise an objection to Martinez's testimony during the hearing, thereby failing to preserve the issue on appeal. Child's reply brief concedes that it did not object to Martinez's testimony as hearsay regarding the urine tests. Child's attorney did, however, make it clear that she disfavored the testimony concerning the urine tests when she moved to dismiss the allegations against him. The attorney argued that the drug test results were never confirmed, there was no information about who tested the samples, and no one had ever seen the tests. Moreover, Child's attorney did disagree with the trial court's ruling in regard to evidence of drug testing during her closing argument. *See, e.g., Fuentes v. Santa Fe Pub. Schs.*, 119 N.M. 814, 818, 896 P.2d 494, 498 (Ct.App. 1995) (stating that under some circumstances, a question raised during closing argument was adequately preserved). The fact that Child did not preserve his objection to Martinez's statements regarding Child's alleged admission during Martinez's testimony is not fatal to Child's appeal. Child's motion to dismiss did invoke some of the rationales underlying the hearsay rule, and in these circumstances we believe that application of the preservation rule in the manner applied in *Erickson K.* would be appropriate. *See Erickson K.*, 2002–NMCA–058, ¶ 5, 132 N.M. 258, 46 P.3d 1258.

{21} Under these circumstances, we cannot accept the State's argument that Child's admission was sufficiently corroborated to satisfy the corpus delecti rule incorporated into the Children's Code as a basic right. The drug test results should not have been considered by the trial court. However, as in *Erickson K.*, because an admission corroborated by proper drug test results would be sufficient to support a revocation of probation, the appropriate remedy is to allow the State the opportunity to present proper drug test results at a new hearing. *See Erickson K.*, 2002–NMCA–058, ¶ 25, 132 N.M. 258, 46 P.3d 1258.

### State's Failure to Enter the Probation Agreement Into Evidence

{22} Child's final issue is that without the admission of the Probation Agreement as evidence, the trial court could not have found that he was on probation. Child raises this issue pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985). The fact is that the probation agreement was part of the trial court's records in the case. The trial court is required to take notice of its own records in a case. *DiMatteo v. County of Doña Ana*, 109 N.M. 374, 379, 785 P.2d 285, 290 (Ct.App.1989). In this probation revocation hearing before the court, the State was not required to formally introduce the probation agreement into evidence.

### CONCLUSION

{23} For the reasons stated, we reverse the trial court's decision to revoke Child's probation. This matter is remanded to the trial court for a new hearing limited to the question of whether Child used marijuana in violation of his probation agreement, and if so, whether probation should be revoked.

{24} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.