This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42367**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CHRISTOPHER REED,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Curtis R. Gurley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Anne Amicarella, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Having considered the brief in chief, concluding the briefing submitted to this Court provides no possibility for reversal, and determining that this case is appropriate for resolution on Track 1 as defined in that order, we affirm for the following reasons.

**{2}** Defendant appeals from the district court's revocation of his probation and order requiring Defendant to serve the balance of the sentence imposed. [BIC 1] Specifically, he argues that the district court erred in revoking his probation because he had already served the requisite jail time for his violations under the Eleventh Judicial District's local rule, LR11-302 NMRA (2022), authorizing a technical violations program for probationers. [BIC 24] In addition, Defendant contends that there was insufficient evidence to support that he violated a condition of his probation by having contact with his wife. [BIC 17]

## Automatic Sanctions for Technical Violations in LR11-302

**{3}** Defendant asserts that the district court erred when it imposed his six-year prison sentence because he had already served the requisite jail time under LR11-302. [BIC 24] Interpretation of a rule is a "question of law subject to de novo review." *State v. Aslin*, 2020-NMSC-004, ¶ 9, 457 P.3d 249. In addition, "we review the terms of the plea agreement de novo." *State v. Gomez*, 2011-NMCA-120, ¶ 9, 267 P.3d 831.

**{4}** Rule 5-805(C) NMRA allows judicial districts to establish a technical violation program (TVP) by a local rule. *Aslin*, 2020-NMSC-004, ¶ 2. A TVP is "a program for sanctions for probationers who agree to automatic sanctions for a technical violation of the conditions of probation." Rule 5-805(C). "Under the TVP, a probationer who was in the program and committed a technical violation of probation waived the procedural rights provided for in Rule 5-805 and was subject to a progressive disciplinary scheme." *Aslin*, 2020-NMSC-004, ¶ 3. "Under the program a probationer may agree: (1) not to contest the alleged violation of probation; (2) to submit to sanctions in accordance with the local rule; and (3) to waive the provisions of Paragraphs D through L of [Rule 5-805]." Rule 5-805(C). "For purposes of this rule, a 'technical violation' means any violation that does not involve new criminal charges." *Id.*

**{5}** According to Defendant's brief in chief, Defendant pled no contest in August 2022 to one count of criminal sexual contact of a minor. [BIC 2; RP 49] The State recommended sex offender supervised probation, which the district court approved. [BIC 2; RP 50, 93-94] Defendant also filed a notice of his acceptance of automatic sanctions for probationers, in which he accepted automatic sanctions for technical violations, pursuant to Rule 5-508(C) and LR11-302. [BIC 3; RP 91] In the judgment and sentence, the district court suspended Defendant's six-year sentence and imposed a "period of supervised probation." [RP 93] In addition, sentencing and probation conditions were listed, and there was no mention of Defendant's acceptance of automatic sanctions for technical violations. [BIC 3; RP 93-94]

**{6}** In August 2023, the State filed a motion to revoke Defendant's probation because Defendant had failed to register as a sex offender, a term of his probation. [BIC 4; RP 105-06] At the hearing, Defendant admitted to the violation. [BIC 4] Defendant's probation officer also testified that Defendant's personal relationship with his wife was problematic as they had gotten into an argument and the police were called. [BIC 4] Ultimately, the district court reinstated Defendant's probation and imposed a new

condition that Defendant have no contact with his wife noting that it was a zero tolerance condition. [BIC 5; RP 118-19]

**{7}** In January 2024, the State filed another motion to revoke probation stating that Defendant had agreed to follow the conditions of his probation and that he had violated the zero tolerance condition by having contact with his wife. [BIC 6; RP 125-28] Defendant was held on no bond while he awaited the hearing. [BIC 6] In February 2024, our Supreme Court withdrew LR11-302, effective immediately. [RP 157-58] In May 2024, Defendant filed an emergency motion for immediate release due to completion of automatic sanction for probationer. [BIC 6; RP 141-43] In that motion, Defendant argued that "[n]one of the violations alleged in the State's [motion to revoke probation] involved new criminal charges and were 'other technical violations' under LR11-302(C)." [RP 142, ¶ 13] Although Defendant acknowledged LR11-302 had been withdrawn, he argued that he had completed serving his sanction prior to its withdrawal, and as such, he should be released. [RP 142-143, ¶¶ 18-19] The State responded that *State v. Romero*, 2011-NMSC-013, 150 N.M. 80, 257 P.3d 900, governed, and that because Defendant's case was still pending, and because LR11-302 was a local procedural rule, and not a statute, greater due process rights under the New Mexico Constitution did not apply. [BIC 7; RP 152-56]

**{8}** At the hearing, Defendant argued that contract principles applied because "the State offered probation as part of the plea agreement and the defendant accepted that offer for the recommendation of probation as part of the plea agreement[,] which was consideration." [BIC 8] Defendant also maintained that sex offender probation fell within the purview of the local TVP rule as there was no language in LR11-302 to exclude it. [BIC 10] Ultimately, the district court denied Defendant's motion for emergency release on three grounds. [BIC 13; RP 175-76] First, the district court ruled that "[c]ontract analysis does not apply to former . . . LR11-302, a procedural rule regarding probation, which itself is a grant of clemency by the sentencing court." [RP 175, ¶ 2] Second, the district court ruled that "LR11-302 does not apply to probationers subject to indeterminate [s]ex [o]ffender [p]robation imposed pursuant to NMSA 1978, Section 31-20-5.2 [(2003)]." [RP 175-76, ¶ 4] Finally, the district court found that pursuant to *Romero*, "the New Mexico Supreme Court's February 23, 2024, withdrawal of LR11-302 should be retroactively applied in this case." [RP 176, ¶ 5] The parties proceeded to an adjudicatory hearing where the district court found that Defendant had violated his probation and entered an order revoking probation and imposed the balance of Defendant's prison sentence. [BIC 17] Defendant appealed.

**{9}** Defendant argues that the district court abused its discretion by imposing his prison term because he had already served the requisite jail time under LR11-302. [BIC 26-35] LR11-302(A) provided, in relevant part, that

> automatic sanctions are hereby adopted for probationers who commit technical violations of probation, who are not under the supervision of the Adult Drug Court Program, and who voluntarily agree, in advance, to the following: (1) to not contest the alleged technical violation of probation; (2)

to submit to sanctions in accordance with this local rule; and (3) to waive the provisions of Rule 5-805(D)-(L).

In addition, LR11-302(C) provided that "[a]s a sanction for all other technical violations, the probationer shall be incarcerated for five (5) days."

**{10}** Defendant argues that the State's and the district court's reliance on *Romero* is misplaced and that the withdrawal of LR11-302 should not be retroactively applied. [BIC 32-35] In *Romero*, our Supreme Court addressed a similar issue of whether the defendant was deprived of due process rights after the Court eliminated portions of Rule 5-604 NMRA, the six-month rule, in *State v. Savedra*, 2010-NMSC-025, 148 N.M. 301, 236 P.3d 20. *Romero*, 2011-NMSC-013, ¶ 1. The defendant had been charged with multiple offenses and after a more than six-month delay, filed motions to dismiss under Rule 5-604. *Id.* ¶ 5. The district court ultimately dismissed the case with prejudice. *Id.* The State appealed, and during the pendency of the appeal, our Supreme Court decided *Savedra*, declaring that "effective for all cases pending . . . we withdraw the six-month rule provisions set forth in Rule 5-604(B)-(E)." *Id.* ¶ 7. The Supreme Court characterized the six-month rule as a procedural rule that does not affect substantive matters, does not involve due process or other constitutional rights, and in which "a defendant does not have a protected interest." *Id.* ¶ 8. Based on this reasoning, the Court held that because the State had appealed the order of dismissal and the case was still pending, *Savedra* was controlling and the six-month rule did not apply. *Id.* ¶ 7. The Court explained that the "retroactive withdrawal of the six-month rule, a procedural rule, is not an unconstitutional ex post facto law under the United States Constitution." *Id.* ¶ 11. In addition, the Court ruled that because Rule 6-504 had not been given the same force and effect as a legislative act, the New Mexico Constitution also did not provide the defendant with a due process right in the rule. *Id.* ¶ 12.

**{11}** We find *Romero* instructive. Here, the central issue centers on LR11-302 and whether its withdrawal by our Supreme Court should be applied retroactively. Rule 5-805(C) is a procedural rule permitting judicial districts to establish a TVP by local rule. *See Aslin*, 2020-NMSC-004, ¶ 2; *id.* ¶ 9 (construing Rule 5-805(C) as a procedural rule). LR11-302 was created pursuant to Rule 5-805(C) and is a procedural rule similar to the six-month rule in *Romero* and its withdrawal can be applied retroactively. *See id.* ¶¶ 11-12. Defendant asserts, however, that the withdrawal of LR11-302 deprived him of due process because "without the local TVP rule in place, [he] faced greater punishment than fifteen days in jail[,]" which is "an ex post facto consideration." We disagree. The withdrawal of LR11-302 did not affect Defendant's due process rights because the withdrawal did not criminalize an innocent act or increase the punishment he was facing. *See Romero*, 2011-NMSC-013, ¶ 10 (explaining that the ex post facto considerations are whether a change in the law operates to "make criminal a previously innocent act, increase the punishment, or change the proof necessary to convict the defendant"). Although LR11-302 would have limited Defendant's time in jail to fifteen days for the alleged technical violations, the district court was never bound to that outcome because the district court has wide discretion in determining what constituted a technical violation. *See Aslin*, 2020-NMSC-004, ¶ 11 (explaining that pursuant to Rule

5-805(C) judicial districts have discretion to determine technical violations for themselves so long as the technical violation does not include new criminal charges). Contrary to Defendant's assertion, the withdrawal of LR11-302 did not operate to increase Defendant's punishment as the district court retained its discretion to sentence Defendant based on the violation. *See* NMSA 1978, § 31-21-15(B) (2016) (giving the courts several options when probation violations are established, including requiring probationers to serve the balance of sentences originally imposed); *Aslin*, 2020-NMSC-004, ¶ 12 (recognizing the broad discretion of the courts in dealing with probation violations). Accordingly, we conclude that the district court did not err when it determined that the "withdrawal of LR11-302 should be retroactively applied in this case" and denied Defendant's motion for an emergency release. [RP 176, ¶ 5]

**{12}** Defendant also argues that contract law applies to his plea agreement. [BIC 29-31] Specifically, Defendant maintains that "the local TVP was an outstanding offer to a contract term regarding a probation violation arrangement that [he] could choose to accept or not[]" and that he "accepted the offer." [BIC 31] Defendant asserts that "the rule set out additional terms of the probation contemplated by the agreement, even though not included in the written plea agreement[.]" Finally, he asserts that the reinstatement of his probation and the imposition of a new condition "support [his] argument that he did not waive any original terms of his agreement." [BIC 31] In light of our conclusion above, however, we are unpersuaded that the district court is bound to the sanction under LR11-302. Moreover, we note that our case law recognizes that probation "is not a matter of right but is an act of clemency within the trial court's discretion." *State v. Lopez*, 2007-NMSC-011, ¶ 7, 141 N.M. 293, 154 P.3d 668. "Thus, probation is a matter of favor providing a defendant with the opportunity to repent and reform." *Id.* (internal quotation marks and citation omitted). Because of this, "a defendant on probation is still convicted of a crime and has no contract with the court." *Id.* (internal quotation marks and citation omitted).

**{13}** Finally, regarding Defendant's argument that "the language of [LR11-302] is broad and does not exclude sex offender probation" such that the automatic sanctions should have been applied, we are again unpersuaded in light of our conclusion above. Regardless of whether LR11-302 contemplated automatic sanctions for those on sex offender supervised probation, as we explained above, the district court has broad discretion to adjust a sentence or probation and was at liberty to select any appropriate sanction, including revoking Defendant's probation and requiring him to serve the balance of his original sentence. *See Aslin*, 2020-NMSC-004, ¶ 12; *see also Lopez*, 2007-NMSC-011, ¶ 12 ("By failing to comply with probation conditions, a defendant demonstrates that clemency is not appropriate because he or she is not willing or able to be rehabilitated. It follows that the court must have broad power to adjust a defendant's sentence by revoking probation when necessary.").

**{14}** Accordingly, we conclude that the district court did not err when it denied Defendant's emergency motion for immediate release.

**Sufficiency of the Evidence**

**{15}** Defendant also argues that the State presented insufficient evidence that he had contact with his wife. "We review a trial court's probation revocation decision under an abuse of discretion standard." *State v. Orquiz*, 2003-NMCA-089, ¶ 4, 134 N.M. 157, 74 P.3d 91. "In a probation revocation proceeding, the [s]tate bears the burden of establishing a probation violation with a reasonable certainty." *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493. "Proof of a probation violation need not be established beyond a reasonable doubt." *State v. Green*, 2015-NMCA-007, ¶ 22, 341 P.3d 10. In reviewing a challenge to the sufficiency of the evidence to support a probation revocation "we view the evidence in a light most favorable to the [state], indulging all reasonable inferences and resolving all conflicts to uphold the [district] court's decision." *In re Bruno R.*, 2003-NMCA-057, ¶ 9, 133 N.M. 566, 66 P.3d 339.

**{16}** As noted above, at the first adjudication hearing, Defendant's probation officer testified that Defendant's personal relationship with his wife was problematic as they had gotten into an argument and the police were called. [BIC 4] The district court reinstated Defendant's probation with the zero tolerance condition that he not have contact with his wife. [BIC 4] At the second adjudication hearing, a different probation officer testified that after reviewing Defendant's phone she observed a screenshot of a text from an unidentified number referring to someone named Chastity, who was Defendant's wife. [BIC 14] Defendant admitted that the conversation had occurred recently, that he would meet with Chastity at various locations around town, and that he would delete the texts and phone calls. [BIC 14] When Defendant was informed he would be taken into custody, he attempted to flee. [BIC 14]

**{17}** On cross-examination, the probation officer admitted that she did not know Chastity's last name or when Defendant had married her. [BIC 14] Defendant introduced a decree of dissolution of marriage between Defendant and Reina B. in 2022. [BIC 14] The probation officer agreed that in the court documents listing the condition that he not have contact with his wife, the wife was never actually named. [BIC 14] Defendant argued that he had to "play [a] guessing game" as to who he should not have been talking to. [BIC 16] However, although the probation officer did not attempt to associate the unidentified number with anyone, she did testify that "[Defendant] admitted the number belonged to 'Chastity' whom he 'always referred to as his wife.'" [BIC 15; RP 180] The probation officer further testified that "she had several meetings with [Defendant] where the two discussed that [he] was not to have contact with Chastity, his wife" and that "[Defendant] would ask when he could have contact with Chastity, his wife." [BIC 15; RP 181] She testified that "when she confronted [Defendant] about the screenshot and the deletions from his phone, he understood who was being discussed." [BIC 15; RP 181] Ultimately, the district court found that Defendant referred to Chastity as his wife, he was instructed not to have contact with Chastity, he attempted to hide that contact from his probation officer, attempted to flee and resist his probation officer, and that it was a zero-tolerance condition. [BIC 17; RP 187] As a result, the district court revoked probation.

**{18}** Defendant argues that the State presented insufficient evidence that he violated the zero-tolerance condition prohibiting contact with an unnamed wife. [BIC 17] Based

on the evidence presented, we conclude that the foregoing testimony supports the district court's determination that Defendant violated the terms and conditions of his probation by having contact with his wife. *See Leon*, 2013-NMCA-011, ¶ 36. To the extent that Defendant asks this Court to reweigh the evidence or draw inferences in his favor, we must decline the invitation. *See In re Bruno R.*, 2003-NMCA-057, ¶ 9 (stating that we indulge all reasonable inferences to uphold a finding that there was sufficient evidence of a probation violation); *see also State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lie). Accordingly, we conclude that the district court did not abuse its discretion in finding that Defendant violated the zero tolerance condition of his probation and affirm the district court's revocation of Defendant's probation on that basis.

**{19}** For the foregoing reasons, we affirm the district court's order revoking Defendant's probation.

**{20}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**